**AIR LINE PILOTS ASS'N, INTER-NATIONAL et al.**

**v.**

**CIVIL AERONAUTICS BOARD.**

**Docket 23137.**

United States Court of Appeals
Second Circuit.

Argued July 2, 1954.

Decided July 8, 1954.

Samuel J. Cohen and Henry Weiss, New York City, for Air Line Pilots Ass'n, International, et al., petitioners.

Stanley N. Barnes, Asst. Atty. Gen., Ralph S. Spritzer, Sp. Asst. to Atty. Gen., Emory T. Nunnelly, Jr., General Counsel, and James L. Highsaw, Jr., Chief, Litigation and Research Division of the Civil Aeronautics Board, Washinton, D. C., for Civil Aeronautics Board, respondent.

Debevoise, Plimpton & McLean, New York City, and Covington & Burling, Washington, D. C., Malcolm A. MacIntyre, New York City, Daniel M. Gribbon, and Clifton J. Stratton, Jr., Washington, D. C., of counsel, for American Airlines, intervenor.

Mayer, Meyer, Austrian & Platt, Chicago, Ill., and Hardin, Hess & Eder, New York City, for United Air Lines, Inc., intervenor.

Chadbourne, Parke, Whiteside, Wolff & Brophy, New York City, for Trans World Airlines, Inc., intervenor.

Before HARLAN, Circuit Judge.

HARLAN, Circuit Judge.

The Court being in recess until next October, this application for an interlocutory stay was argued before me as a single member of the Court on July 2, 1954, at which time I allowed the applications of American Airlines, Trans World Airlines and United Air Lines to intervene generally in this proceeding.

After careful consideration of the papers submitted by the various parties and the oral arguments, I have reached the conclusion that the application for a stay must be denied. Because of the importance of the issues I think it is due that I state my reasons for this conclusion.

I entertain no doubt as to the power of the Board to issue the Special Air Regulation here involved. Section 205 (a) of the Civil Aeronautics Act, 52 Stat. 984, 49 U.S.C.A. § 425(a), sets forth in general terms the powers and duties of the Board. The Board is enjoined and empowered, *inter alia*, "to make and amend such general or special rules, regulations, and procedure, pursuant to and consistent with the provisions of this Act, as it shall deem necessary to carry out such provisions * * *." More specifically, Title VI of the Act, entitled "Civil Aeronautics Safety Regulation", empowers the Board to prescribe and revise from time to time "Reasonable rules and regulations governing, in the interest of safety, the maximum hours or periods of service of airmen, and other employees, of air carriers * * *". 52 Stat. 1007-8, 49 U.S.C.A. § 551(a) (5). In substance what the Board has done here is to revise a regulation governing maximum hours or periods of service of airmen by issuing a special regulation temporarily relaxing the eight-hour rule under prescribed conditions, so as to permit continuance of the existing type of nonstop transcontinental flights, pending the outcome of the general rule making proceeding initiated by the Board on May 28, 1954. Whether the revision be called an exemption, a waiver or a Special Air Regulation seems not important.

The petitioners, contending that the Board was without power to take this action, point to § 416(b) (2) of Title

IV of the Act,[1] which, in authorizing exemption of carriers from certain provisions of the Act, specifically prohibits exemption from any requirement of Title IV ("Air Carrier Economic Regulation") or from any regulation issued *thereunder* which provides for maximum flying hours for pilots or co-pilots. 52 Stat. 1005, 49 U.S.C.A. § 496(b) (2). The Special Air Regulation at issue here was made not under Title IV but under Title VI of the Act. Petitioners argue, however, that § 401(d) (1) of Title IV, 52 Stat. 987, 49 U.S.C.A. § 481(d) (1), which requires as a condition precedent to the granting of a certificate of public convenience and necessity a finding that the carrier-applicant is fit, willing and able to conform to the regulations of the Act and of the Board, brings into Title IV regulations respecting flight-time limitations, issued under Title VI, so as to make them unalterable by waiver, exemption or special regulation by reason of the prohibition contained in § 416(b) (2).

■ This contention seems without merit upon examination of the structure of the Act. Title IV, to which alone the prohibition of § 416(b) (2) applies, is concerned with the economic regulation of air carriers; and the maximum flying hour limitation referred to in § 416(b) (2) relates to the 85-hour monthly limitation established in § 401(*l*) (1), which requires each carrier to "maintain rates of compensation, maximum hours, and other working conditions * * * so as to conform with decision numbered 83 made by the National Labor Board on May 10, 1934 * * *." 52 Stat. 990, 49 U.S.C.A. § 481(*l*) (1). A prohibition against exemption from such economic regulation can scarcely be taken to embrace safety regulations pro-

mulgated under a different Title of the Act and for largely different purposes.

■ It is also claimed that the procedure followed by the Board failed to meet the requirements of the Administrative Procedure and Civil Aeronautics Acts. I think this is not so. The Special Air Regulation involved here is easily within the definition of a "rule" as contained in § 2 of the Administrative Procedure Act, 5 U.S.C.A. § 1001(c). And the procedure pursued by the Board conforms to the "rule-making" requirements of § 4 of that Act, 5 U.S.C.A. § 1003. Petitioners had actual notice of proposed rule-making and were afforded an opportunity, of which they availed themselves, to participate in the proceedings through submission of written data, views, and oral argument.

The fact that the Board did not proceed by way of the more formal route provided in §§ 7, 8 of the Administrative Procedure Act, 5 U.S.C.A. §§ 1006, 1007, is of no moment in this proceeding, since such procedure is required only where "rules are required by statute to be made on the record after opportunity for an agency hearing". § 4, A.P.A., 5 U.S.C.A. § 1003(b); see American Trucking Ass'ns v. United States, 1953, 344 U.S. 298, 319–320, 73 S.Ct. 307, 97 L.Ed. 337. No such requirement is to be found in the Civil Aeronautics Act. Even if the Board had acted via its pending general rule-making proceeding, the petitioners would have been entitled to no more formal hearing than they received in this instance.

For these reasons I conclude that the power of the Board to make the Special Air Regulation in question, and the manner in which it proceeded, are not open to any real doubt.

The next question which I consider, and which in my view of the matter

---

1. The Act as printed in 52 Stat. 973 et seq., is divided into Titles, and § 416(b) (2) is specifically confined in application to requirements contained in or issued under Title IV. As printed in 49 U.S. C.A., however, the Act is divided into Subchapters, and § 496(b) (2) appears to be applicable to the entire chapter, which would include Subchapter VI as well as Subchapter IV. Both parties in their papers on this motion have cited the Act as it appears in the Statutes at Large and I have so taken it.

requires the denial of this application, relates to the propriety of a Court interfering with this action of the Board. This question also underlies the petitioners' claim of threat of irreparable injury, since that claim is bottomed on the contention that accidents may follow from increasing the permissible maximum flight duty, and that is but another way of saying that the Special Air Regulation is an improvident tampering with safety.

■■ Congress has placed the control of civil aeronautics in the hands of the Board, supplemented by the responsibilities committed to the Civil Aeronautics Administration. Particularly in the field of safety regulations, which are inherently matters of opinion involving many complex and technical considerations, a Court should not interfere with the expert judgment of the Board, absent a clear showing that the Board has acted beyond its powers or otherwise improvidently. I have already found the Special Air Regulation to be within the powers of the Board, and I also find it quite impossible to say that any such showing of improvidence has been made here, especially in light of (1) the reasoned opinion of the majority of the Board; (2) the advice of the Civil Aeronautics Administrator, who is the official primarily charged with the enforcement of safety regulations, that in his opinion increasing the maximum duty aloft from 8 to 10 hours on this type of nonstop transcontinental flight would have no adverse effect on safety; (3) the favorable experience on transatlantic flights where for the last nine years the maximum permissible duty aloft has been 12 hours; (4) American's safety experience on these transcontinental flights since they were first inaugurated in November 1953; and (5) the letter of American's pilots who have been flying this schedule, in which they describe the operation as "not a compromise with safety, but one of the easiest and most enjoyable flights we have ever flown on American Airlines."

Perhaps it should also be said that I find nothing in either of the opinions of the two dissenting members of the Board which seriously reflects upon the correctness of any of the specific "safety" findings or reasoning contained in the majority opinion. The questions of whether the public interest would be better served by awaiting the outcome of the Board's pending general rule-making proceeding, or whether the 8-hour rule should be relaxed as to American in view of its past alleged infractions of the rule on its westward flights— albeit with the full knowledge and acquiescence of the Administrator—were matters within the Board's discretion, and in my opinion do not touch the propriety of the Special Air Regulation from the point of view of safety, which is the sole consideration with which we are now concerned.

■ It is familiar law that an interlocutory stay will not be granted unless it is at least found that irreparable injury is likely to occur, if a stay is not granted, and that the moving party is likely to prevail on the merits. Embassy Dairy, Inc. v. Camalier, D.C.Cir. 1954, 211 F.2d 41, 43–45; see Trans World Airlines v. Civil Aeronautics Board, 2 Cir.1950, 184 F.2d 66, 69. And on this record I am unable to make any such findings. Were the question simply one of balancing a proved threat to safe air travel against economic loss to the air carriers it could hardly be gainsaid that the consideration of safety would be paramount. And surely the parties would not be divided on that issue, for it is manifest that concern for the safety of the air travelling public is something which the Civil Aeronautics Board and the interested air carriers share in common with the Air Line Pilots Association. If I had any doubt as to the good faith or conscientiousness of the Board in taking the course it has, I would not hesitate to issue a stay. But it would not be proper for me simply to substitute different views for those of the Board, duly reached in the exercise of

its expert judgment and responsibilities to the public.

In view of these conclusions, I find it unnecessary to reach the question as to whether this Court has jurisdiction over the Petition for Review. See Arrow Airways v. Civil Aeronautics Board, 1950, 87 U.S.App.D.C. 71, 182 F.2d 705, certiorari denied 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608; United Gas Pipe Line Co. v. Federal Power Commission, 1950, 86 U.S.App.D.C. 314, 181 F.2d 796.

The application for an interlocutory stay is denied.