276 F.2d 892
 9 Fair Empl.Prac.Cas. 1027, 1 Empl. Prac.
Dec. P 9663
AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, an
Unincorporated Association, Clarence N. Sayen, et
al., Plaintiffs-Appellants,
v.
Elwood R. QUESADA, Individually and as Administrator of the
Federal Aviation Agency, Defendant-Appellee.
 No. 337, Docket 26174.
 United States Court of Appeals Second Circuit.
 Argued April 8, 1960.
Decided April 21, 1960.
 
 Samuel J. Cohen, New York City (Henry Weiss, Herbert A. Levy and Cohen & Weiss, New York City, on the brief), for plaintiffs-appellants.
 S. Hazard Gillespie, Jr., U.S. Atty., Southern District of New York, New York City (Robert J. Ward, Asst. U.S. Atty., Sherman J. Saxl, Asst. U.S. Atty., Daggett W. Howard, Gen. Counsel, William A. Crawford, Jr., Chief Atty., Federal Aviation Agency, Washington, D.C., on the brief), for defendant-appellee.
 Before LUMBARD, Chief Judge, and HAND and HINCKS, Circuit Judges.
 LUMBARD, Chief Judge.
 
 
 1
 On December 1, 1959 the defendant, Elwood R. Quesada, Administrator of the Federal Aviation Agency, promulgated a regulation which provides:
 
 
 2
 'No individual who has reached his 60th birthday shall be utilized or serve as a pilot on any aircraft while engaged in air carrier operations.'[1]
 
 
 3
 This regulation took effect on March 15, 1960.
 
 
 4
 The plaintiffs, thirty-five individual pilots, their collective bargaining representative, Air Line Pilots Association, and its president, brought the suit in January 1960 for a declaratory judgment that the regulation was null and void and for an injunction against its threatened application. The complaint alleged-- and the plaintiffs contend on this appeal-- that the regulation is invalid because it was issued without the holding of adjudicatory hearings required by the Administrative Procedure Act, 5 U.S.C.A. 1001-1011, and by 609 of the Federal Aviation Act of 1958, 49 U.S.C.A. 1429, before an airman's license may be amended, modified, suspended or revoked, and because it was arbitrary, discriminatory and without reasonable relation to the standards set forth in 601 of the Act, 49 U.S.C.A. 1421, under which it was issued. The plaintiffs also claim that the regulation, by terminating their right to pilot planes in commercial service after age sixty, deprives them of property in their pilots' licenses without due process of law. The district court, after submission of lengthy affidavits, denied the plaintiffs' motion for a preliminary injunction but reserved judgment on the Administrator's cross motion for summary judgment. Plaintiffs brought this appeal under 1292(a)(1) of the Judicial Code, 28 U.S.C.A. We affirmed the order.[2]
 
 
 5
 The Federal Aviation Act was passed by Congress for the purpose of centralizing in a single authority-- indeed, in one administrator-- the power to frame rules for the safe and efficient use of the nation's airspace. The Administrator was given the authority, theretofore divided between the Civil Aeronautics Board and the Civil Aeronautics Authority:'* * * To promote safety of flight of civil aircraft in air commerce by prescribing and revising from time to time:
 
 
 6
 '(5) Reasonable rules and regulations governing, in the interest of safety, the maximum hours or periods of service of airmen, and other employees, of air carriers; and
 
 
 7
 '(6) Such reasonable rules and regulations, or minimum standards, governing other practices, methods, and procedure, as the Administrator may find necessary to provide adequately for national security and safety in air commerce.'[3]
 
 
 8
 Pursuant to this statutory authority the Administrator and his medical staff in the fall of 1958 began a study concerning the aging process and the diseases and physiological deterioration that accompany it in an effort to determine whether a maximum age should be set for service by commercial pilots. The Administrator took counsel with various experts in aviation medicine and safety and, among other things, determined the practices followed by five foreign air lines with respect to a mandatory retirement age. Finally, in June 1959 the Administrator published a proposed regulation in substance the same as that ultimately prescribed.[4] In accordance with the rule-making requirements of 4 of the Administrative Procedure Act, 5 U.S.C.A. 1003, opportunity was afforded for the submission of written data and briefs. About one hundred comments, including those of the plaintiff association, were received. A large majority favored the regulation. No hearing was held since the Administrator determined, as he was entitled to under the rulemaking provisions of the Administrative Procedure Act, that a hearing would not 'serve a useful purpose' and that it was not 'necessary in the public interest.'
 
 
 9
 Plaintiffs assert that since the certificates of all commercial pilots are in effect modified by the regulation, and in the case of pilots already sixty, terminated, promulgation of the regulation was not rule-making within the meaning of the Administrative Procedure Act, but that the Administrator was obliged to proceed by holding an adjudicative hearing for each airman affected and by the entry of an 'order.'[5] Alternatively, they say that whether one labels the issuance of the regulation rule-making or not, 609 of the Federal Aviation Act, 49 U.S.C.A. 1429, requires the Administrator to hold a hearing and permit each pilot affected to submit evidence as to the fairness of the regulation before his certificate can be amended.
 
 
 10
 Section 2 of the Administrative Procedure Act, 5 U.S.C.A. 1001, defines a 'rule' as 'any agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy * * *' The regulation before us is just such a statement. It is directed to all the commercial airlines and to the more than 18,000 licensed commercial pilots. It looks to the future. It has the character of legislative enactment carried out on an administrative level. See Willapoint Oysters, Inc. v. Ewing, 9 Cir., 174 F.2d 676, 693, certiorari denied, 1949, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527. Adjudication, on the other hand, whether administrative or judicial, is the application of a statute or other legal standard to a given fact situation involving particular individuals. Promulgation of the age sixty limitation by the Administrator was the very antithesis of adjudication; it was the formulation of a general rule to be applied to individual pilots at a subsequent time. We think the directive was properly issued in accordance with the rule-making requirements of 4 of the Administrative Procedure Act.[6] See United States v. Storer Broadcasting Co., 1956, 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081; Air Line Pilots Ass'n v. C.A.B., 2 Cir., 1954, 215 F.2d 122; 1 Davis, Administrative Law 5.01 (1958); Fuchs, Procedure in Administrative Rule-Making, 52 Harv.L.Rev. 259 (1938).
 
 
 11
 The Administrator's action does not lose the character of rule-making because it modifies the plaintiff pilots' claimed property rights in their licenses and their contractual rights under collective bargaining agreements to pilot planes beyond age sixty. Nor does the regulation violate due process because it modifies pilots' rights without affording each certificate holder a hearing. Administrative regulations often limit in the public interest the use that persons may make of their property without affording each one affected an opportunity to present evidence upon the fairness of the regulation. See United States v. Storer Broadcasting Co.,supra; Bowles v. Willingham, 1944, 321 U.S. 503, 519-520, 64 S.Ct. 641, 88 L.Ed. 892. Obviously, unless the incidental limitations upon the use of airmen's certificates were subject to modification by general rules,[7] the conduct of the Administrator's business would be subject to intolerable burdens which might well render it impossible for him effectively to discharge his duties. All changes in certificates would be subject to adjudicative hearings, including appeals to the court, and each pilot whose license was affected-- here some 18,000-- might demand to be heard individually. When met with a similar challenge, Justice Holmes stated:
 
 
 12
 'Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving him a chance to be heard.' Bi-Metallic Investment Co. v. State Board of Equalization, 1915, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372.
 
 
 13
 All private property and privileges are held subject to limitations that may reasonably be imposed upon them in the public interest. Only when the limitations are too stringent in relation to the public interest to be served are they invalid. The limitations here are entirely reasonable. Home Building & Loan Ass'n v. Blaisdell, 1934, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413.
 
 
 14
 The plaintiffs strenuously urge that, however things may be under the Administrative Procedure Act, the statutory scheme of the Federal Aviation Act shows that Congress intended to afford airmen the greater protection of an individual hearing before their certificates may be modified. We disagree. Section 609 of the Act, 49 U.S.C.A. 1429, states that 'the Administrator may * * * reexamine any civil airman,' and if, as a result of such reexamination, the Administrator 'determines that safety in air commerce * * * and the public interest requires, (he) may issue an order amending, modifying, suspending, or revoking * * * (any) airman certificate.' The certificate holder must be advised of the 'charges or other reasons relied upon by the Administrator' for his action, and a hearing must be afforded with a right of appeal and trial de novo before the Civil Aeronautics Board and ultimate right of review in the courts of appeals. It is clear that Congress intended that the section should apply only when an order of the Administrator is directed to an individual airman and is concerned with conduct or other facts peculiar to that airman. Use of 'airman' in the singular, the reference to 'charges,' the word 'order' in contrast with 'regulation' in 601, and the statement that upon review the Board shall not 'be bound by findings of fact of the Administrator' all strongly suggest that 609 is not intended to apply when a general directive of the Administrator is promulgated, though the regulation may in fact modify airmen's certificates. Cf. 602, 604 of the Act, 49 U.S.C.A. 1422, 1424. Moreover, were we to interpret 609 to apply to a case like that before us, the area in which 601 might operate would be severely restricted.
 
 
 15
 There is no indication anywhere that Congress intended such limitation on 601. Indeed, the legislative history of the Federal Aviation Act and the practice under the prior law show that Congress intended the Administrator to have broad power to establish safety rules for the nation's airways without the delay attendant upon numerous individual hearings and protracted appeals. The immediate impetus to the legislation was a series of major air crashes culminating in the midair collision of two large airlines over the Grand Canyon in 1956 with the loss of 128 lives. Congress believed there was a need for a more streamlined and efficient means for safety rule-making in place of the system of divided duties and responsibilities existing under the Civil Aeronautics Act, 49 U.S.C.A. 401 et seq. The committee reports make plain that the Administrator was to have sole responsibility for safety rule-making under the new law, and that the procedures of 609 were only to come into operation when the Administrator modified or revoked 'a certificate.' H.R.Rep.No.2360, 85th Cong., 2d Sess. (1958); see S.Rep.No.1811, 85th Cong., 2d Sess. (1958), U.S.Code Cong. & Adm. News 1958, p. 3741. The elaborate procedural requirements of 609 are patently incompatible with the expedition with which Congress intended that the Administrator should act in the promulgation of safety rules. The clear public interest in the speedy adoption of rules relating to air safety far outweighs any possible advantage in a multitude of piecemeal and time-consuming hearings brought by each contesting airman.
 
 
 16
 The practice under the prior law also lends support to our interpretation of the present statute. Under a rule-making provision[8] similar to 601 of the 1958 statute, the CAB for many years promulgated rules setting forth physical standards to be met by pilots, see 14 C.F.R. 29.1-.4, and also directives to airlines concerning pilot training, maximum hours of flight and other similar matters. See, e.g., 14 C.F.R. 14.300-.303, .320. Though these regulations had the effect of modifying the certificates of airmen, the procedures of the statutory provisions[9] paralleling the present 609 were not followed and no hearing was afforded each pilot. See Air Line Pilots Ass'n v. C.A.B., supra. Nor have any of the proceedings brought against airmen pursuant to the provisions of law which were the predecessor of 609 involved the challenge of a regulation issued by the CAB, so far as we have been able to find. See, e.g., Specht v. C.A.B., 8 Cir., 1958, 254 F.2d 905; Wilson v. C.A.B., 100 U.S.App.D.C. 325, 244 F.2d 773, certiorari denied, 1957, 355 U.S. 870, 78 S.Ct. 119, 2 L.Ed.2d 75.[10]
 
 
 17
 Plaintiffs assert that the age sixty limitation is arbitrary and discriminatory and without relation to any requirements of safety. For purposes of judicial review, such an argument must mean that the Administrator had no reasonable basis for his exercise of judgment. American Trucking Ass'ns v. United States, 1953, 344 U.S. 298, 314, 73 S.Ct. 307, 97 L.Ed. 337; Norman v. Baltimore & Ohio R.R., 1935, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885. Surely this is not the fact in the case before us as there is considerable support for the Administrator's action. The Administrator found that the number of commercial pilots over sixty years of age has until recent years been very few but is increasing rapidly; that older pilots because of their seniority under collective bargaining agreements often fly the newest, largest, and fastest planes; that available medical studies show that sudden incapacitation due to heart attacks or strokes become more frequent as men approach age sixty and present medical knowledge is such that it is impossible to predict with accuracy those individuals most likely to suffer attacks; that a number of foreign air carriers contacted had mandatory retirement ages of sixty or less; and that numerous aviation safety experts advocated establishing a maximum age of sixty or younger. In spite of these considerations, plaintiffs ask us to weigh other arguments against the establishment of a maximum age and to hold that the Administrator's action was unreasonable. It is not the business of courts to substitute their untutored judgment for the expert knowledge of those who are given authority to implement the general directives of Congress. The Administrator is an expert in his field; this is the very reason he was given the responsibility for the issuance of air safety regulations. We can only ask whether the regulation is reasonable in relation to the standards prescribed in the statute and the facts before the Administrator. Of that there can be no doubt in this case.
 
 
 18
 Nor is the regulation discriminatory because it applies only to the piloting of commercial aircraft, and does not restrict pilots with respect to other planes. The Administrator did not act unreasonably in placing greater limitations on the certificates of pilots flying planes carrying large numbers of passengers who have no opportunity to select a pilot of their own choice. The Federal Aviation Act contemplates just such distinctions between the regulations governing 'air commerce' and those governing other air transportation. See 601(b), 49 U.S.C.A. 1421(b).
 
 
 19
 The preliminary injunction was properly denied. The order is affirmed.
 
 
 
 [1]
 14 C.F.R. 40,260(b). Part 40 of the regulations concerns scheduled interstate air carrier operations. An identical provision appears at 14 C.F.R. 41.48(e); Part 41 pertains to air carrier operations outside the continental limits of the United States. Part 42, which governs irregular air carrier operations, contains the same provision at 14 C.F.R. 42.40(c), except that in this provision the word 'large' appears in front of 'aircraft.'
 The regulation does not apply to private or other pilots not engaged in carrying passengers, mail, or freight for hire. See Federal Aviation Act of 1958, 101 et seq., 49 U.S.C.A. 1301 et seq.
 
 
 [2]
 Since it is clear that the individual pilot plaintiffs have standing to challenge the regulation, we need not decide whether the other plaintiffs, Air Line Pilots Association, International, and Clarence Sayen, its president, have standing to raise the issues before us
 Nor do we decide whether the plaintiffs have made a showing of irreparable injury adequate to warrant the granting of a preliminary injunction.
 
 
 [3]
 Federal Aviation Act of 1958, 601(a), 49 U.S.C.A. 1421(a)
 Section 601(b) goes on to state in part:
 'In prescribing standards, rules, and regulations * * * the Administrator shall give full consideration to the duty resting upon air carriers to perform their services with the highest possible degree of safety in the public interest. * * * The Administrator shall exercise and perform his powers and duties under this chapter in such manner as will best tend to reduce or eliminate the possibility of, or recurrence of, accidents in air transportation. * * *'
 
 
 [4]
 24 Fed.Reg. 5249 (1959). The proposed regulation also stated:
 'No individual who has reached his 55th birthday shall be utilized or serve as a pilot in command, or as second in command of a flight crew of 3 or more pilots, on a turbojet-powered aircraft emgaged in air carrier operations unless he held an aircraft type rating for the particular aircraft either prior to such birthday or the effective date of this regulation.'
 This provision was subject to considerable criticism and is still under consideration by the Administrator.
 
 
 [5]
 Section 2(d) of the Administrative Procedure Act, 5 U.S.C.A. 1001(d) states:
 "Order' means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form), of any agency in any matter other than rule making but including licensing. 'Adjudication' means agency process for the formulation of an order.'
 
 
 [6]
 Sections 7 and 8 of the Administrative Procedure Act are not applicable in this case, since these sections are made applicable by 4(b) to rule-making proceedings only when 'rules are required by statute to be made on the record after opportunity for an agency hearing. * * *' The Federal Aviation Act contains no such requirement
 
 
 [7]
 Each license issued to a pilot itself states: 'This license is of such duration as is provided in the currently effective Civil Air Regulations, unless sooner suspended or revoked.'
 
 
 [8]
 52 Stat. 1007 (1938), 49 U.S.C.A. 551
 
 
 [9]
 52 Stat. 1011 (1938), 49 U.S.C.A. 559
 
 
 [10]
 Plaintiffs also contend that under prior practice the regulations afforded a license applicant or license holder an opportunity to apply for an exemption from the physical requirements of the regulations, see 14 C.F.R. 29.5, but that by placing the present rule in Part 40 of the regulations, 14 C.F.R. 40.260(b), as a directive to the airlines, this opportunity has been taken away. Apart from the fact that we doubt that the Administrator is required by the statute to afford anyone an opportunity to apply for an exemption from any requirement of the regulations, we think it is probable that the present statute and regulations do afford just such an opportunity. See 601(c) of the Act, 49 U.S.C.A. 1421(c), and 14 C.F.R. 405.19, .20, .31. Cf. United States v. Storer Broadcasting Co., 1956, 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081