**GREENE COUNTY PLANNING BOARD, et al., Petitioners,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

**Power Authority of the State of New York, Intervenor.**

**Motion #17, Docket 73-2553.**

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1973.

Decided Dec. 27, 1973.

Neil E. Needleman, Glens Falls, N. Y., and Barry H. Garfinkel, New York City, for petitioners.

George W. McHenry, Jr., Sol., F. P. C. and Bruce F. Kiely, Atty., F. P. C., Washington, D. C., for respondent.

Scott B. Lilly, Gen. Counsel, Power Authority of the State of New York, New York, N. Y. (Thomas F. Moore, Jr., New Rochelle, N. Y., of counsel), for intervenor.

Before MOORE, HAYS and MANSFIELD, Circuit Judges.

MOORE, Circuit Judge:

Pursuant to Rule 18 of the Federal Rules of Appellate Procedure, Rule 27 of the Second Circuit, Section 10(d) of the Administrative Procedure Act and Section 313(b) of the Federal Power Act, the Greene County Planning Board and others (petitioners) have moved (1) for a stay of all proceedings before the respondent Federal Power Commission (FPC) in the case presently before the Commission known as "Power Authority of the State of New York—Project No. 2685"; (2) for a preference; and (3) to dispense with an appendix permitting the appeal to be heard on the original record. Subsequent to the return day of this motion (October 29, 1973) the FPC moved to dismiss a petition for review dated October 16, 1973 annexed to petitioners' motion papers on the grounds that (1) the challenged order is interlocutory; and (2) no application for rehearing was timely made before the FPC.

Since our original decision on January 17, 1972,[1] a draft EIS was prepared and circulated (January 1973) and, after comments thereon, a final EIS (FEIS) was prepared and made available (May 1973).

In March 1973, petitioners, dissatisfied with the draft EIS which they claimed was deficient in many respects, made this claim by motion filed with the Presiding Administrative Judge. The claim was denied. Petitioners on April 24, 1973 appealed this ruling which was certified to the FPC on May 16, 1973. On June 15, 1973 the FPC issued an order deferring decision on the motion until further consideration had been had. Hearings continued and November 19, 1973 was fixed as the date for the filing of initial briefs.

1. 455 F.2d 412 (1972).

The motions here under consideration are part of a larger dispute between the Greene County Planning Board and the FPC. The disagreement started in 1968 when the Power Authority of the State of New York (PASNY) filed an application with the Federal Power Commission to construct, operate and maintain a 1,000,000 kilowatt power project near the towns of Blenheim and Gilboa in upstate New York. The Greene County Planning Board has intervened in the licensing process employed by the Commission in passing upon the PASNY application.[2] In Greene County Planning Board v. Federal Power Commission, 455 F.2d 412 (2d Cir.), cert. denied 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972), this Court agreed with the intervenors that the construction of the Gilboa-Leads Transmission Line, an integral part of the Blenheim-Gilboa Project, required the Commission to prepare a specific Environmental Impact Statement before hearings could continue on the application. The FPC prepared just such a statement and now the Greene County Planning Board is complaining that the statement was inadequate as a matter of law because: it dealt with only "a small, isolated segment of an integrated, comprehensive plan," it "does not reflect a 'detailed independent analysis' or a 'systematic, interdisciplinary' approach," and it "is nothing more than a brief in support of the outcome favored by the staff and does not even try objectively to describe . . . in any manner the alternatives the Staff rejects."[3]

The conflict between our nation's seemingly insatiable demand for energy production and its parallel concern for the preservation of its wildlife and natural resources has created a mass of litigation. See, e. g., Willrich, The Energy-Environment Conflict: Siting Electric Power Facilities, 58 Va.L.Rev. 257 (1972). However, the fact that this conflict is substantial and that its resolution may have far-reaching effects does not mean that decisions regarding the conflict must be prolonged beyond reasonable limits.

The Federal Power Commission has both fulfilled its statutory obligation and sufficiently complied with this Court's order by providing for an Environmental Impact Statement. The draft EIS was subjected to criticism as is evidenced in the motion papers. The parties are free to comment on any claimed inadequacy in the FEIS.

In its motion to dismiss the present petition for review, the FPC argues that there is no final order to be reviewed. Petitioners claim that non-action by the Commission had the effect of creating an order which is presently appealable. Even assuming, arguendo, that an order came into being by this process, there would be no finality attached thereto. Despite the protracted procedural sparring, there can be no final appealable order until some decision has been handed down by the administrative hearing officer and/or the FPC. At that time the adequacies or deficiencies of the EIS or all other matters relative to a decision on the merits can be argued. There will scarcely be an EIS filed which will not appear to some party to be deficient according to his point of view. If appeals were to be countenanced at the behest of every party who might find the statement deficient in certain respects, appeals would be unending and to little avail. Until a final decision has been rendered, there is nothing to review.

The motion for a stay is denied; the motion to dismiss the petition for review is granted. Nothing contained herein is to be regarded as dealing with the merits of such issues as may come before the court on appeal from a final order.

2. See Greene County Planning Board v. Federal Power Commission, 455 F.2d 412 (2d Cir.), cert. denied, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972), for a further exposition of the background to this dispute.

3. Statement of the environmental position of the Greene County Planning Board and Town of Greenville, Re: Project No. 2685, at 1.

MANSFIELD, Circuit Judge (dissenting):

Once again Greene County Planning Board has invoked our aid in its dispute with the Federal Power Commission ("FPC"). The petitioners ask this Court to stay further FPC proceedings on a proposed power transmission line until the FPC is in compliance with an antecedent order of this Court.

In January 1972 we directed the FPC to prepare a "single coherent and comprehensive environmental analysis" of the Gilboa-Leeds transmission line as a part of the larger Blenheim-Gilboa power project. Greene County Planning Board v. Federal Power Commission, 455 F.2d 412, cert. denied, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972). We made it clear that while one or more draft impact statements might suffice for the purpose of eliciting comments from other federal agencies pursuant to § 102(2)(C) of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4332(2)(C), the FPC was directed to prepare a final detailed statement that would itself be subject to scrutiny during the agency review process. 455 F.2d at 420–421. It was specifically contemplated that petitioners would be afforded an opportunity to cross-examine witnesses from the FPC and the Power Authority of the State of New York (PASNY) on the basis of the final impact statement. 455 F.2d at 422.

Subsequent to our order the FPC staff composed a draft impact statement to be circulated to other agencies, which was characterized by the Environmental Protection Agency (EPA) and the New York State Department of Environmental Conservation (ENCON) as so deficient as to preclude informed comment. Petitioners moved before the administrative trial judge for an order directing the FPC staff to revise and recirculate this draft impact statement prior to any further hearings. That motion was denied on April 19, 1973, whereupon the petitioners appealed to the FPC. On June 15, 1973, the FPC issued an order to the effect that it would "defer" its decision on the merits of the petitioners' motion.[1] As of October 18, 1973, when petitioners filed their appeal with this Court, the FPC had not issued a decision on merits of petitioners' motion.

Notwithstanding its failure to decide petitioners' motion the FPC in the interim directed that the underlying hearing process be resumed. From July 2, 1973, through September 19, 1973, hearings were held with only the disputed draft impact statement before the parties.

Petitioners, appealing from the FPC's June 15 order as a *sub silentio* denial of their motion under the Commission's rules, see 18 C.F.R. § 1.28(c), request this Court to stay the administrative proceedings pending review, which at this point means staying the submission of briefs due on November 19 for all parties to the hearing. Not surprisingly, the appeal roused the FPC to action and on October 25 it issued its "deferred" decision, denying petitioners' motion without prejudice and remanding it to the administrative law judge for his reconsideration.[2]

The pattern that emerges from the FPC's conduct is clear. The FPC first defers, then transfers, all in an attempt

---

1. The Commission's order deferring decision was consciously framed to avoid any finality that would permit an appeal. The pertinent section of the order reads:

   "[W]e find that it is appropriate and proper in the administration of both statutes [the Federal Power Act and the National Environmental Policy Act] and in the public interest to defer our decision upon such certified and related matters so that, by such action, they shall not be deemed to have been denied under §§ 1.-12(e) and 1.28(c) of our Rules of Practice and Procedure."

2. For those who have followed this case—and the FPC has not made that particularly easy—the latest FPC action must come with a sense of *deja vu*. When the petitioners filed their first appeal in this case in October 1971, they argued that the FPC had denied certain of their motions *sub silentio*. Several days after the filing of the appeal the FPC issued orders on the languishing motions.

to thwart review and to insulate the hearing process from the data that this Court had earlier ordered that it make available for scrutiny at the hearing. In my view the time has come to still the heraclitean flux in the FPC's procedures, to review the denial of the petitioners' motion without further administrative ado, and to stay the final segment of the administrative proceeding pending that review.

Although a stay may be an extraordinary remedy, surely it is appropriate to this case. Where an agency's use of procedural cat-and-mouse games in an effort to avoid a final order amounts to a sham and its conduct, if successful, would thwart our explicit mandate, I believe that its action is sufficiently "final" to permit review. See 455 F.2d at 426; Environmental Defense Fund Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584 (1971). Otherwise our mandate would be emasculated and by circumvention reduced to impotence. The traditional calculus used to assess a motion for a stay rests upon the following considerations: (1) whether the petitioner has made a strong showing that he is likely to prevail on the merits of the appeal; (2) whether he has shown that irreparable damage will be done to him absent such a stay; (3) whether the issuance of the stay will substantially injure other parties interested in the proceeding; (4) whether the public interest is adversely affected by the granting of the stay. See, e. g., Virginia Petroleum Jobbers Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). All of these prerequisites are met here. The likelihood of petitioners' success is strong. With respect to the public interest we do not here face a case of a private licensee or party challenging the administrative process on the basis of its self-interest, see, e. g., Virginia Petroleum Jobbers

Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958), and Air Line Pilots Association, International v. Civil Aeronautics Board, 215 F.2d 122 (2d Cir. 1954), but of a public entity seeking to represent the public interest in environmental control. That the cause of environmental control may redound to the particular benefit of the petitioners in no way impugns the public interest in the petitioners' enterprise, for the petitioners seek but to champion what has been declared to be national policy in NEPA. The conflict is one between the interest of the petitioners in preserving intact their geography and environment and the interest of other citizens in energy consumption. Answers to such questions can hardly be said to fall uniquely within the expertise of the FPC. Petitioners seek to guarantee that the FPC have the benefit of the very diversity of comments and perspectives that § 102(2)(C) of NEPA requires.

A stay would not cause substantial injury to the other parties interested in the present administrative proceedings, since it will operate only to postpone the filing of briefs. If, on an expedited appeal, we were to direct that a new draft impact statement might be issued, the hearing could be resumed after the statement was furnished. If not, the briefing would proceed promptly upon our affirmance of the FPC's decision. In either event there would be a minimum of interference with the administrative process.

Petitioners, on the other hand, will suffer seriously from denial of a stay. The twists and rebounds in the FPC's process have already taxed their financial resources.[3] The compiling of briefs on the basis of hearings that will be shown on appeal to have been inadequate would add to the waste and still further reduce their ability to follow the pro-

---

3. While this Court rejected petitioners' request on its last appeal that PASNY or the FPC be directed to pay petitioner's legal expenses, essentially on the ground that a sufficiently clear congressional mandate to that effect did not exist, the Court did note that the financial burden of legal fees might significantly hamper petitioners' efforts to represent the public interest before the Commission. 455 F.2d at 426.

ceedings to a conclusion. Furthermore I believe that less irreparable injury need be shown where it can be demonstrated, as practitioners have done here, that the FPC in its conduct of the hearing has violated both the letter and spirit of an existing Court mandate. A stay is then appropriate to enable us promptly to vindicate our solemn and unequivocal mandate.

That the FPC has failed to prepare the comprehensive impact statement specified by this Court is clear. That the FPC may have cured such deficiencies in its final impact statement seems to me to be without support in the record. Our earlier opinion scored the FPC for its failure to consider impending plans for further power development when it was analyzing a project likely to be influenced by such future development. We made it clear that we expected the FPC's impact statement to go beyond the initial Blenheim-Gilboa project to include consideration of the planned pumped storage facilities downstream from it, which have since been named the Breakabeen project.[4] In fact the draft impact statement merely mentioned the Breakabeen project or selected aspects of it and made no environmental analysis of the facilities even though environmental studies of the facilities had been completed prior to the date of issuance of the draft statement.

The foregoing major deficiency in the draft statement was not cured in the final impact statement, for in commenting on the final statement the EPA, in its June 22, 1973, letter to the FPC, noted that one of its primary concerns remained unanswered, viz., the cumulative effects of the Blenheim-Gilboa and the Breakabeen projects on the water resources of the area. The letter states that because the Gilboa-Leeds line is needed to support the Blenheim-Gilboa project, the EPA no longer insists on one comprehensive impact statement for both but, although it is willing to have the cumulative effect of the two pumped storage facilities assessed in the draft statement for the Breakabeen project, "[a]n environmental impact statement which does not discuss the cumulative impact of the two facilities will, in our opinion, be seriously deficient."

The last quoted statement accords with the earlier order of this Court. However, the willingness to defer the comprehensive statement is in direct conflict with it. By failing to issue a comprehensive impact statement for the purposes of the hearing then underway, the FPC disregarded the clear mandate of this Court. Its departure from the mandate is further compounded by the fact that the impact statements gave little attention to the proposed base load generating plant to be constructed near the terminus of the Leeds line. Once again the FPC appears to be cutting back on its responsibility "by blinding itself to potential developments." 455 F.2d at 424.

4. Footnote 26 in our earlier opinion, 455 F. 2d at 423, referred specifically to PASNY's study to determine the "feasibility of constructing additional pumped storage facilities downstream from the Blenheim-Gilboa project." The opinion points out that PASNY's position was that the Commission should take this into account in considering the Gilboa-Leeds line. The opinion further states: "[W]e fail to see how the Commission, if it is to fulfill the demanding standard of 'careful and informed decisionmaking,' Calvert Cliffs' [v. United States Atomic Energy Com'n, 146 U.S.App.D.C. 33, 449 F.2d 1109] 449 F.2d at 1115, can disregard impending plans for further power development. For example, it may be that it would be proper to defer decision on the Gilboa-Leeds line until these plans were crystallized, particularly if there is a likelihood that future development might affect the optimum location of the line or even make the line unnecessary. Although the basic defect of current planning and licensing process is 'the inevitably narrow scope of the decision the agency [has] to make: whether or not to license a single and specific [project],' we cannot tolerate the Commission cutting back on its expanded responsibility by blinding itself to potential developments notwithstanding its lack of authority to compel future, alternate construction." 455 F.2d at 424.

Because there is substantial evidence that the FPC has failed to comply with our earlier order and because the limited resources of the petitioners will be needlessly wasted in pursuing the administrative process, I would grant a stay of the administrative hearing and briefing. The protection of our mandate and the consideration of the commonweal demand no less.