**ECOLOGY ACTION and Suzanne Weber, Petitioners,**

v.

**UNITED STATES ATOMIC ENERGY COMMISSION, Respondent,**

and

**Niagara Mohawk Power Corporation, Intervenor.**

**No. 358, Docket 73–1857.**

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1974.

Decided Feb. 21, 1974.

Richard I. Goldsmith, Syracuse, N. Y., for petitioners.

Raymond M. Zimmet, Atomic Energy Commission, Washington, D. C. (Marcus A. Rowden, Gen. Counsel, and Jerome Nelson, Sol., Atomic Energy Commission, Washington, D. C., Wallace H. Johnson, Asst. Atty. Gen., Edmund B. Clark, and Raymond N. Zagone, Dept. of Justice, Washington, D. C., of counsel), for respondent.

Lex K. Larson, Washington, D. C. (Arvin E. Upton, E. David Doane, and LeBoeuf, Lamb, Leiby & MacRae, Washington, D. C., of counsel), for intervenor.

Before FRIENDLY and MANS-FIELD, Circuit Judges, and ZAMPANO,* District Judge.

FRIENDLY, Circuit Judge:

Petitioners here seek to review an order of the Atomic Safety and Licensing Board (ASLB) to which the Atomic Energy Commission (AEC) has delegated its licensing functions, 42 U.S.C. § 2241 and 10 C.F.R. § 2.721. The order, dated April 12, 1973, was made in a proceeding, Docket No. 50–410, entitled "In the Matter of Niagara Mohawk Power Corporation (Nine Mile Point, Unit No. 2)", wherein Niagara Mohawk sought permission to construct a third nuclear power generating station on the southern shore of Lake Ontario in Scriba, N. Y.,[1] and in which petitioners had been allowed to intervene.

The order, so far as here pertinent, overruled objections by petitioners to a Prehearing Conference Order issued January 26, 1973, which excluded three issues from consideration in the proceeding. These were:

(1) "the incremental effects upon environment caused by the mining, processing and reprocessing of the fuel needed for the plant" and "the incremental burden placed upon the facilities for the long term storage of highly toxic radioactive wastes produced at the facility" (hereafter the broad environmental issues);

(2) "the consequences of a major accident with breach of containment and the release of massive quantities of radiation into the environment" (hereafter the Class 9 accident issue); and

(3) applicant's failure to "give adequate consideration to load-shedding and to alternate restrictions on the consumption of electricity," by changes in the rate structure for electric power and other means (hereafter the energy conservation issue).

The exclusion of the broad environmental issues was based on several prior decisions of the Atomic Safety and Licensing Appeal Board: Vermont Yankee Nuclear Power Corporation, ALAB–56 (June 6, 1972); Vermont Yankee Nuclear Power Corporation, ALAB–73 (Oct. 11, 1972); and Long Island Lighting Company, ALAB–99 (Feb. 1, 1973). In each of those cases, the Commission had held that since such issues had previously been considered in general terms, particular permit proceedings should focus on considerations peculiar to that project rather than those applicable to all. Moreover, in November 1972 the AEC initiated a rulemaking proceeding for further consideration of general environmental matters, 37 F.R. 24191 (Nov. 15, 1972), in which petitioner Ecology Action is participating as a member of a group known as the "National Intervenors." The basis for excluding the Class 9 accident issue was that such an accident could result only from the combination of a loss-of-coolant accident (a Class 8 accident) and a failure of the backup emergency core cooling system (ECCS)—a combination the likelihood of which has been estimated to be not more than one in 10 million during a year's operation. On this also the AEC has initiated a rulemaking proceeding to develop more stringent criteria for the ECCS, 36 F.R. 22774 (Nov. 26, 1971), in which Ecology Action is participating as one of the National Intervenors. The energy conservation issue was excluded on the ground that, giving due weight to National Resources Defense Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 458 F.2d 827 (1972), the alternatives were highly speculative and the ASLB could not secure sufficiently definite information about them. However, after reading petitioners' brief in this court, the AEC, by order dated November 6, 1973, reversed the ASLB on this point and ordered the Board to allow the presenta-

---

* Of the District Court for the District of Connecticut, sitting by designation.

1. One station has been in commercial operation since 1969. Subject to the grant of an operating permit, the second is scheduled to begin operations during the current year.

tion of evidence on energy conservation alternatives.[2]

Jurisdiction to entertain the petition depends on 28 U.S.C. § 2342(4) which empowers a court of appeals to review "all final orders of the Atomic Energy Commission made reviewable by section 2239 of title 42." That section, whose full text is quoted in the margin,[3] provides that "Any final order" of the AEC in a proceeding for, *inter alia*, a construction permit "shall be subject to review in the manner prescribed" in what is now 28 U.S.C. §§ 2341–2351 "and to the provisions of section 10 of the Administrative Procedure Act, as amended." Niagara Mohawk contends that the April 12 order is not subject to review by us at this time; petitioners and, more surprisingly, the AEC say that it is.

All parties agree that an order of an administrative agency may be "final" even if it is not the last that may be entered. An order denying intervention constitutes one example. See, *e. g.*, Interstate Broadcasting Co. v. United States, 109 U.S.App.D.C. 255, 286 F.2d 539 (1960); American Communications Ass'n v. United States, 298 F.2d 648 (2 Cir. 1962). Such well-known cases as Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), and McCulloch v. Sociedad Nacional de Marineros, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), afford others. A third may be furnished by the portion of Greene County Planning Board v. FPC *(Greene County I)*, 455 F.2d 412, 418–25 (2 Cir.), cert. denied 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972), where we entertained, apparently without objection on this point, an appeal from an order of the FPC refusing to stay hearings on the environmental effects of a power line because of the agency's failure to prepare its own impact statement, the court having seemingly rejected in another context, 455 F.2d at 425–426, any crutch that might be furnished by the absence of the word "final" in the judicial review section of the Federal Power Act, 16 U.S.C. § 825*l*(b).

2. The AEC and intervenor Niagara Mohawk say that this moots the exclusion of the energy conservation issue, the point most heavily stressed in petitioners' brief. Petitioners deny this, claiming that the permission to offer evidence on energy conservation does not cure the omission of any discussion of this alternative in the Final Environmental Impact Statement (FEIS).

3. (a) In any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license or construction permit, or application to transfer control, and in any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees, and in any proceeding for the payment of compensation, an award or royalties under sections 2183, 2187, 2236(c) or 2238 of this title, the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding, and shall admit any such person as a party to such proceeding. The Commission shall hold a hearing after thirty days' notice and publication once in the Federal · Register, on each application under section 2133 or 2134(b) of this title for a construction permit for a facility, and on any application under 2134(c) of this title for a construction permit for a testing facility. In cases where such a construction permit has been issued following the holding of such a hearing, the Commission may, in the absence of a request therefor by any person whose interest may be affected, issue an operating license or an amendment to a construction permit or an amendment to an operating license without a hearing, but upon thirty days' notice and publication once in the Federal Register of its intent to do so. The Commission may dispense with such thirty days' notice any publication with respect to and application for an amendment to a construction permit or an amendment to an operating license upon a determination by the Commission that the amendment involves no significant hazards consideration.

(b) Any final order entered in any proceeding of the kind specified in subsection (a) of this section shall be subject to judicial review in the manner prescribed in the Act of December 29, 1950, as amended, and to the provisions of section 10 of the Administrative Procedure Act, as amended.

In Pepsico, Inc. v. FTC, 472 F.2d 179, 187 (2 Cir. 1972), a case governed by the general language of § 10(c) of the APA ("final agency action for which there is no adequate remedy in a court") rather than by a special statute, after consideration of some of these cases and others pointing in a different direction, notably Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), and Arkansas Power & Light Co. v. FPC, 330 U.S. 802, 67 S.Ct. 963, 91 L.Ed. 1261 (1947), rev'g, 81 U.S.App.D.C. 178, 156 F.2d 821 (1946), we accepted "for the sake of argument" that final agency action could be found "if an agency refuses to dismiss a proceeding that is plainly beyond its jurisdiction as a matter of law or is being conducted in a manner that cannot result in a valid order." Without referring to our *Pepsico* decision, petitioners and the AEC urge in effect that this case comes within the second branch of the test we there sent up as a trial balloon. While an order excluding evidence would normally be the archetype of a non-final order, since any error will be inconsequential if the proponent prevails and can be corrected on review of the final order if he loses, it is contended that a different rule should prevail in environmental proceedings because of the enormous size of the records, the scant resources of environmental advocates, and the fact that an early reversal, if called for, will save time rather than lose it.

■ However, these arguments cut both ways. The giant delays that now plague such proceedings counsel against allowing appeals, interlocutory in any normal sense, which, if unsuccessful, would produce still more. The hearings in this case have been under way since October 10, 1973, and a hearing on the energy conservation issue was scheduled for the very week this petition was argued to us. The hearings thus might well be finished before we could decide what matters they ought to encompass. The alternative, a stay of the hearings, is also unattractive. We therefore agree with the holding of the District of Columbia Circuit, in a case much like this, that "the availability of relief from the final order granting a certificate is sufficient to preclude the ruling denying admission from being considered a final order." Thermal Ecology Must Be Preserved v. AEC, 139 U.S.App.D.C. 366, 433 F.2d 524, 526 (1970). If there is to be an exception, it should be limited to cases where the exclusionary ruling is so flagrantly wrong and demonstrably critical as to make it apparent that the agency is not merely courting the possibility of reversal but is running into the certainty of it if the ultimate decision should be against the proponent of the evidence. In that exceedingly limited category, the game of bestowing the rubric of finality on an order which, from an analytical standpoint, is surely interlocutory, may be worth the candle. It may well be said that an exception which is so vague and untidy and which demands at least some look at the merits before determining jurisdiction has little to commend it and that *all* orders excluding evidence should be held to be non-final. We could only plead, in confession and avoidance, that a rule affording a little play in the joints for judgment may work better than either of the polar extremes. This seems to be the thrust of the discussion in Davis, Administrative Law Treatise § 20.05 (1958 and 1970 Supp.).

■ Such an exception, however, would not assist the petitioners here. Their attacks do not meet the severe test necessary to overcome the essentially interlocutory nature of the order here sought to be reversed. Even if we agree with petitioners that the energy conservation issue is not moot, see fn. 2, nothing in *Greene County I*, *supra*, or any other decision of which we are aware holds that any deficiency in a FEIS is automatic ground for reversal of an order granting a permit although the issue has been opened for full consideration in an agency hearing. Our recent decision in Greene County Planning Board v. FPC (*Greene County II*), 490 F.2d 256,

258 (2 Cir. 1973), implies the contrary. The FEIS in the instant case included ten pages of discussion of "The Requirement for Power" and sixteen pages on "Alternative Energy Services and Sites." The idea that if Niagara Mohawk's customers could be induced to consume less energy, it would have less need for power than had been projected was hardly so esoteric that the omission of any reference to this in the FEIS would prevent an Oswego housewife from making this point in the proceeding if she cared to do so.[4] Neither do we find the Board's position on the environmental and Class 9 accident issues so patently wrong as petitioners allege. The FEIS contained 39 pages of discussion of the local environmental effects of the proposed plant, including the transportation of nuclear fuel and solid radioactive wastes, and eight on plant accidents through Class 8. The AEC's position on Class 9 accidents, as we understand it, is that the possibility is too remote for consideration in licensing proceedings, and that efforts could more usefully be expended to improve the criteria for the ECCS, as it is currently doing in a rulemaking proceeding. The agency is likewise conducting a new rulemaking proceeding on the environmental effects of nuclear plants insofar as these are common to all; it would be absurd that the issue of the environmental effect of uranium mining in Wyoming should have to be separately considered on every application to construct nuclear plants from Maine to California. Rather the idea that a licensing agency should endeavor to identify environmental issues common to many applications and handle them in "generic" proceedings would seem to benefit all parties, particularly the poorly-financed environmental groups. See American Commercial Lines, Inc. v. Louisville & Nashville R. R., 392 U.S. 571, 88 S.Ct. 2105, 20 L. Ed.2d 1289 (1968); Murphy, *supra*, fn. 4, at 986–89. The Administrative Conference of the United States has recently proposed precisely this, Recommendation 73–6.[5] While we do not mean this discussion to foreclose petitioners from raising the issues here presented on review of a final order granting a permit if one should issue, we are not at all convinced that the AEC is steering what is bound to be a collision course.

The petition for review is dismissed for lack of jurisdiction by this court.

4. This opinion should not be construed as holding that matters would stand differently if the AEC had not reversed the ASLB's exclusionary ruling. See Murphy, The National Environmental Policy Act and the Licensing Process: Environmentalist Magna Carta or Agency Coup de Grace, 72 Colum.L.Rev. 963, 987 (1972). That point is not before us.

5. The explanatory memorandum accompanying the recommendation said:

While many of the questions in environmental cases will turn on matters peculiar to the individual project, a great many, including most matters of technology assessment, will be common to a number of proceedings. A single generic proceeding may enable environmental groups, which frequently lack sufficient resources to produce experts and to prepare written submissions for individual cases, to make more effective presentations. The potential complexity of these issues, the fact that the number of people knowledgeable about the technology is apt to be small, and the likelihood the testimony adduced in separate hearings will be substantially repetitive, argue strongly that where possible the issues should be decided in the forum of a single proceeding. The decisions made should be binding in subsequent proceedings subject to some limited opportunity to reopen the earlier decisions on the basis of good cause shown.